IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **STANLEY A. MITCHELL,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: 20-1163-PWG** |
| **BAYVIEW LOAN SERVICING, LLC,** *et al.*, | * | |
| **Defendants.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff, Stanley A. Mitchell, through counsel, filed this lawsuit on May 6, 2020 against Defendants Bayview Loan Servicing, LLC ("Bayview"), US Bank N.A. ("US Bank"), Wells Fargo Bank, National Association ("Wells Fargo"), MERSCORP Holdings, Inc. ("MERSCORP"), and Shapiro & Brown, LLP ("S&B"), alleging seven causes of action related to the foreclosure of his property. Compl., ECF No. 1. Mr. Mitchell amended his complaint on August 17, 2020, adding Defendants, Metropolitan Life Insurance Company ("MetLife"), and eight individually named attorneys with the Shapiro & Brown law firm: Kristine D. Brown, William M. Savage, Gregory N. Britto, Lila Z. Stitely, R. Kip Stone, Thomas J. Garnter, Philip S. Shriver, and Jordy B. Hirschfeld (collectively, the "S&B Attorneys"). Am. Compl., ECF No. 27.[1]

---

[1]     As a preliminary matter, I note that although the S&B Attorneys were named as Defendants in Mr. Mitchell's Amended Complaint, there is not a single allegation in the complaint asserted against any one of them. As such, these Defendants shall be DISMISSED. *See Johnson v. Dore*, No. RWT–12–3394, 2013 WL 5335626, at *4 (D. Md. Sept. 20, 2013) (granting Rule 12(b)(6) motion to dismiss claims as to two defendants because the "Complaint d[id] not include any allegations concerning [those defendants] to support a plausible claim against them" but rather "repeatedly refer generally to 'Defendants,' without identifying specific Defendants or conduct"). Further, there are no allegations against MERSCORP, other than identifying it as the national electronic registry system, noting that it was identified as a beneficiary in the Deed of Trust, and that it released the Deed of Trust when the debt was discharged. Am. Compl. ¶¶ 8,

Defendants have moved to dismiss the Amended Complaint, *inter alia*, on the grounds of *res judicata* and failure to state a claim upon which relief can be granted: (1) Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint, or in the Alternative for Summary Judgment, ECF No. 34 ("Mot. I"); (2) Defendants' [Bayview, US Bank, and MetLife] Motion to Dismiss First Amended Complaint, ECF No. 36 ("Mot II"); and (3) [S&B's] Motion to Dismiss Plaintiffs' Complaint, ECF No. 37 ("Mot. III").   I have reviewed the filings[2] and find a hearing unnecessary.   *See* Loc. R. 105.6 (D. Md. 2021).   Because I find that Mr. Mitchell's claims in Counts 2, 3, 4, and 7 are precluded by *res judicata*, and the remaining claims asserted against Bayview fail to state a plausible claim, the Defendants' motions shall be GRANTED.   Counts 2, 3, 4, 6, and 7 shall be DISMISSED WITH PREJUDICE.   Counts 1 and 5 are DISMISSED WITHOUT PREJUDICE.

## BACKGROUND[3]

Mr. Mitchell purchased a property at 1233 Adams Road, Waldorf, Maryland ("Property") as his personal residence on September 25, 2008.   Am. Compl. ¶ 18.   He entered into a loan with Wells Fargo to refinance the Property on August 26, 2009, and he signed a promissory note ("Note") and deed of trust ("DOT").   *Id.* at ¶ 18.   The loan was insured by the Federal Housing

---

18, 99.   The only count asserted against MERSCORP is Count 7, which is being dismissed with prejudice. Accordingly, MERSCORP shall be DISMISSED.

[2]      Mot. I, ECF No. 24; Resp. I, ECF No. 46; Reply I, ECF No. 49; Mot. II, ECF No. 36; Resp. II, ECF No. 45; Reply II, ECF No. 50; Mot. III, ECF No. 37, Resp. III, ECF No. 47; the accompanying memorandums; exhibits as discussed below; and Amended Complaint, ECF No. 27.

[3]      For purposes of considering a motion to dismiss, this Court accepts the facts that Plaintiff alleged in his Complaint as true.   *See Aziz v. Alcoac*, 658 F.3d 388, 390 (4th Cir. 2011).   I note, however, that there are documents, such as the State Court Docket, attached to Defendants' motions which I may consider because it is integral to the complaint, or to which I may take judicial notice. *See Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).   Where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011).

Administration ("FHA"). *Id.* at ¶ 19.  On July 29, 2016, Wells Fargo initiated foreclosure through its Substitute Trustee (S&B)'s filing of a "foreclosure order to docket."  *Id.* at ¶ 20.  Mr. Mitchell alleges that there was no effort to conduct a required face-to-face meeting with him prior to filing the foreclosure.  *Id.* at ¶ 21.  He also alleges that although he was not served with the foreclosure action, he did receive notice of the foreclosure sale prior to the sale.  *Id.* at ¶¶ 29-32.

Mr. Mitchell alleges that Bayview claims to have acquired the servicing of the loan in January 2017 and sent him a letter on September 1, 2017, falsely claiming that JPB4D Remic Trust 2016-4 was the owner of the loan, and that US Bank was the trustee for the trust.  *Id.* at ¶¶ 22-24.  He adds that he received a letter dated October 3, 2017, in which Bayview claimed that MetLife was the owner of the loan, but he was never notified that it had been transferred or sold. *Id.* at ¶¶ 25, 27.  Mr. Mitchell further alleges that in August and September 2017, he sent two letters to Bayview requesting information on the original Note, a payoff or reinstatement quote, loan payment history for the life of the loan, proof or documents to substantiate any fees or costs assessed on the loan, copies of any documents sent after the loan was declared in default, and disputing the reporting of delinquent payments to the credit bureaus.  *Id.* at ¶ 34.  He states that although Bayview responded, they did not provide complete information and failed to address most of his requests.  *Id.* at ¶¶ 36-38, 46.

In August 2019, Mr. Mitchell states that he sent another letter to Bayview requesting that it return the original Note marked as paid or provide a payoff for any amount still owing on the loan, but Bayview refused.  *Id.* at ¶¶ 40-42.  He then followed up in December 2019 demanding a certified copy of the note and proof that Bayview was the holder of the Note or had rights to collect on it during the period April 2017 to June 2019, but he states that Bayview did not respond.  *Id.* at ¶¶ 43-44.  Mr. Mitchell also states that he sent two letters to credit bureaus in November and

December 2019 disputing Bayview's reporting of the mortgage loan, and in response to the credit bureau's investigation, Bayview merely verified the information as accurate without investigating. *Id.* at ¶ 47.

Mr. Mitchell asserts seven causes of action:

- Count 1 – Violation(s) of Federal Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), against Bayview;

- Count 2 – Violation(s) of Maryland Consumer Debt Collection Act, Md. Code Ann., Com Law § 14-201 *et seq.* ("MCDCA"), against all Defendants except MERSCORP;

- Count 3 – Violation(s) of Maryland Consumer Protection Act, Md. Code Ann., Com Law § 13-101 *et seq.* ("MCPA"), against all Defendants except S&B and MERSCORP;

- Count 4 – Violation(s) of Maryland Mortgage Fraud Protection Act, Md. Code Ann., Com Law § 7-401 *et seq.* ("MMFPA"), against all Defendants except S&B and MERSCORP;

- Count 5 – Violation(s) of Real Estate Settlement Procedures Act, 12 U.S.C. §2605 *et seq.* ("RESPA"), against Bayview;

- Count 6 – Violation(s) of Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), specifically U.S.C. § 1681s-2(b), against Bayview; and

- Count 7 – Breach of Contract, against all Defendants (in the alternative).

Am. Compl. ¶¶ 49-104.

Defendants' motions seek dismissal with prejudice on the basis that many of Mr. Mitchell's claims are barred by *res judicata*, and the *Rooker-Feldman* doctrine,[4] and generally, that none of his claims are sufficiently alleged to state a claim upon which relief can be granted. Wells Fargo

---

[4]     In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), the Supreme Court formulated a general rule that distinguishes general constitutional challenges to state laws and regulations, over which federal courts have jurisdiction, from requests for review of specific state court decisions, over which they have no jurisdiction. Federal claims that are "inextricably intertwined with" state court decisions in judicial proceedings fall outside of the federal court's jurisdiction. *See Feldman*, 460 U.S. at 486-87.

also argues that the claims against it are time-barred, and alternately seeks summary judgment with regard to claims arising from face-to-face regulations, because they assert that the undisputed facts establish that it complied with the regulations.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine*

5

*Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). A court may also take judicial notice of matters of public record. *Secretary of State For Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004)). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2-3 (D. Md. Apr. 12, 2011). However, if the Court considers matters outside the pleadings, the Court must treat the motion as a motion for summary judgment. Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, No. RDB-12-318, 2013 WL 139194, at *2 (D. Md. Jan. 10, 2013).[5]

All claims rooted in fraud allegations are subject to a heightened pleading standard. Rule 9(b) states that "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). Such allegations of fraud typically "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC-11-3758, 2013 WL 247549, at *5 (D. Md. Jan. 22, 2013) (quoting *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 313-14 (D. Md. 2000)).

---

[5]      Here, I have not considered matters other than the pleadings, documents that are referenced in the pleadings and are integral to it, and documents for which the Court may take judicial notice, and I have not considered Wells Fargo's motion under the alternative summary judgment standard. Accordingly, I have not considered Plaintiff's arguments related to the need for discovery. *See* Resp. I at 3-6. To the extent that Plaintiff has requested discovery, it is DENIED AS MOOT.

**DISCUSSION**

**I.      Res Judicata**

Bayview, joined by its co-Defendants, argues that the state law consumer protection claims—MCDCA (Count 2), MCPA (Count 3), and MMFPA (Count 4)—fail because they are barred by *res judicata* and/or the *Rooker-Feldman* doctrine. Mot. II Mem., ECF No. 36-1, at 7. Wells Fargo argues that all claims alleged against it (Counts 2, 3, 4, and 7) are precluded.  Mot. I Mem., ECF No. 34-1, at 5.  Similarly, S&B argues that Plaintiff's claims are barred by *res judicata* and the *Rooker-Feldman* doctrine (Counts 2 and 7 are asserted against S&B).  Mot. III Mem., ECF No. 38, at 10-12.

*Res judicata* "bars a party from suing on a claim that has already been litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." *Reid v. New Century Mortg. Corp.*, No. AW-12-2083, 2012 WL 6562887, at *3 (D. Md. Dec. 13, 2012) (quoting *Ohio Valley Envtl. Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009)) (citations omitted). When considering this defense, "a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Kalos v. Centennial Sur. Assocs., Inc.*, No. CCB–12–1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n. 1 (4th Cir. 2000).  And, when a federal court litigant asserts *res judicata* based on a state court judgment, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

Under Maryland law, *res judicata*, or claim preclusion, provides grounds for dismissal if a defendant establishes that "(1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been determined in prior litigation; and (3) there was a final judgment on the merits in the prior litigation." *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 643-44, 2011 WL 3734984, at *3 (4th Cir. 2011) (quoting *R & D 2001, LLC v. Rice*, 938 A.2d 839, 848 (2008)).

There is no dispute that the ratification of the sale in a foreclosure action is a final judgment on the merits.  *See, e.g., Gordon v. Nationstar Mortgage LLC*, No. CIV. RWT 14-1361, 2015 WL 5165453, at *1 n.6 (D. Md. Sept. 2, 2015) (noting that "most cases applying Maryland law identify ratification of the sale as the final judgment in a foreclosure action") (citing cases).  Mr. Mitchell also raises no arguments disputing that the parties are the same or in privity.[6] However, Mr. Mitchell contends that because he did not appear and raise objections in the foreclosure action, it has no preclusive effect, because the foreclosure action was an *in rem* proceeding as opposed to an *in personam* proceeding.  Resp. II, ECF No. 45, at 4. And he argues that his claims do not undermine the foreclosure proceeding; rather, he seeks only damages for violations of the MCDCA, MCPA, and MMFPA.  *Id.*

Under Maryland law, courts apply the transaction test to determine whether claims are identical. *See Kent Cnty. Bd. of Educ. v. Bilbrough*, 525 A.2d 232, 238 (Md. 1987). "Under the transaction test, a 'claim' includes all rights of the plaintiff to remedies against the defendant with

---

[6]      "Privity in the *res judicata* sense generally involves a person so identified in interest with another that he represents the same legal right." *Jones v. HSBC Bank USA, N.A.*, No. RWT 09CV2904, 2011 WL 382371, at *5 (D. Md. Feb. 3, 2011) (quoting *Anyanwutaku v. Fleet Mortgage Group, Inc.,* 85 F. Supp. 2d 566, 572–73 (D. Md. 2000)).

respect to all or any part of the transaction, or series of connected transactions, out of which the claim arose." *Boyd v. Bowen*, 806 A.2d 314, 325 (Md. Ct. Spec. App. 2002) (citing *FWB Bank v. Richman*, 731 A.2d 916, 928 (Md. 1999)). Notably, *res judicata* bars not only claims from the original litigation, but also other claims that could have been brought in the original litigation. *Id.* at 326 (citing *Gertz v. Anne Arundel Cnty.*, 661 A.2d 1157, 1161 (Md. 1995)). If a claim or defense arose from the same series of transactions as the claim that was adjudicated, it may be precluded even if it was not asserted. *Skibicki v. Fairmont Plaza*, PWG-17-1366, 2018 WL 3862252, at *3 (D. Md. Aug. 14, 2018).

In Maryland, foreclosure proceedings are governed by the Maryland Real Property Code and the Maryland Rules. *Laney v. Maryland*, 842 A.2d 773, 780 (Md. 2004).  Maryland law historically has allowed for summary *in rem* foreclosure proceedings, in which the foreclosure sale is conducted pursuant to a power of sale in the deed of trust under the summary procedure authorized by Md. Code Real Property Art. § 7-105(a).  *See Fairfax*, 655 A.2d at 1272.  "In that type of proceeding a sale of the mortgaged property can be held in approximately twenty-one days after docketing." *G.E. Capital Mortg. Services, Inc. v. Levenson*, 657 A.2d 1170, 1178 (Md. 1995) (citing Md. Rules W72 and W74.a.2).  However, more recently, the Rules have changed, and the current Rules provide for much greater notice to the homeowner and for expanded challenges to the foreclosure. *See Arrington v. Ocwen Loan Servicing, LLC*, 2019 WL 7190500, at *6 (Md. Ct. Spec. App. Dec. 26, 2019) (describing the differences between the current rules and those in effect at the time *Fairfax* was decided in 1995); *see also Maddox v. Cohn*, 36 A.3d 426, 431 (Md. 2012) ("Both the legislative acts and the amendments to the Rules were designed primarily to protect the interests of residential homeowners in the foreclosure process."). Importantly, with the combination of the more extensive service requirements and expanded ability to respond, courts

have more recently considered that the "Order to Docket" that commences a foreclosure action is a pleading, and it must be served on the borrower/homeowner. *Id.* at *9 (citing Md. Rules 1-321, 14-209).

Further, there are at least three means of challenging a foreclosure: "obtaining a pre-sale injunction pursuant to Maryland Rule 14–209(b)(1), filing post-sale exceptions to the ratification of the sale under Maryland Rule 14–305(d), and the filing of post-sale ratification exceptions to the auditor's statement of account pursuant to Maryland Rule 2–543(g), (h)." *Jones v. Rosenberg*, 940 A.2d 1109, 1115 (Md. Ct. Spec. App. 2008) (quoting *Wells Fargo Home Mortgage, Inc. v. Neal*, 922 A.2d 538, 550 (Md. 2007)).  Upon ratification of a foreclosure sale, objections to its propriety are no longer entertained; final ratification is *res judicata* as to the validity of the sale, and it cannot be attacked in collateral proceedings. *Manigan v. Burson*, 862 A.2d 1037, 1040-41 (Md. Ct. Spec. App. 2004).  "The State can do no more than give the litigant 'a day in court'; if he does not utilize it but suffers the decision to go against him by default, he is as conclusively and finally bound by it, as though he had actively contested it." *Id.* at 1041 (citation omitted); *see also Greenbriar Condominium, Phase I Council of Unit Owners, Inc. v. Brooks*, 878 A.2d 528, 563 (Md. 2005) (noting that the property owner's obligation is "to prosecute his rights, not to sit on them").[7]

However, "not all claims raised in a subsequent suit that arise out of the same transaction or series of transactions at issue in a prior suit are barred." *Currie*, 950 F. Supp. 2d at 801.  In *Currie*, the court determined that it was plausible that the relief requested by the plaintiff in the

---

[7]    As noted, *supra* at p. 3, Plaintiff pleaded that he had notice of the foreclosure sale, even though he denies that he was served with the foreclosure action, and a review of the state court filings related to the foreclosure are devoid of any efforts taken by him to appear or otherwise challenge the foreclosure proceedings, either prior to or after the sale.

MMFPA claim would not contradict or nullify any essential foundation of the foreclosure. *Id.* at 801-802 (discussing whether an issue raised and not litigated is precluded by collateral estoppel[8]). In *Jones v. HSBC Bank*, Jones had voluntarily appeared and raised numerous objections in the foreclosure action, but then chose not to appeal or seek revision of the state-court decision. 444 F. App'x at 645. The *Jones* court held that the state-court foreclosure constituted an *in personam* final judgment on the merits, which precluded Jones from raising the same claims. *Id.* Jones also argued that Maryland's permissive counterclaim rules insulate from preclusion the claims that Jones could have raised but did not, but the court concluded that "to allow them in this case would, in effect, nullify the original foreclosure judgment. Avoiding such a consequence is a central concern of the claim preclusion doctrine." *Id.* at 644 n.3. *See also Bullock v. Ocwen Loan Servicing, LLC*, Civil No. PJM 14–3836, 2015 WL 5008773, at *6 (D. Md. Aug. 20, 2015) (barring the plaintiff's FDCPA, MCDCA, and MCPA claims by *res judicata* because they could have been asserted as counterclaims in the foreclosure action); *Coleman v. Countrywide Home Loans, Inc.*, Civil Case No. L–10–2297, 2010 WL 5055788, at *4 (D. Md. Dec. 3, 2010) ("To allow her now to claim damages stemming from the ratification of the foreclosure sale which she failed to contest would permit her impermissibly to attack a final judgment of the Circuit Court.").

Here, Mr. Mitchell's Amended Complaint includes allegations that he was sent a notice of the foreclosure sale before the sale and that he was aware of the foreclosure before it occurred. Am. Compl. ¶¶ 30, 55-56, 79. The state foreclosure action and the present case relate to the same transaction or occurrence, i.e., the Note and Deed of Trust on the Property, the foreclosure action,

---

[8]    Collateral estoppel, or issue preclusion, is a sub-species of *res judicata* that applies when a party raises in a successive lawsuit "an issue of fact or law actually litigated and resolved in a valid court determination essential to [a] prior judgment" and that party had "a full and fair opportunity to litigate," even if the issue "recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

and the propriety of the foreclosure sale. *See, e.g.*, *id.* at ¶¶ 18-20 (referencing the Note, the Deed of Trust, the Property, and the foreclosure action), ¶¶ 56-62 (alleging an illegal foreclosure sale), ¶ 72 (alleging deliberate misrepresentations under the Note and Deed of Trust), ¶ 104 (seeking to have the funds paid at the foreclosure sale refunded to him).  Mr. Mitchell's claims under MCDCA, MCPA, MMFPA, and his alternative breach of contract claim,[9] all are claims that could have been raised in the foreclosure proceedings, but were not, or they seek to undermine the ratified foreclosure. Therefore, the claims are precluded from being raised now.  *See Bullock*, 2015 WL 5008773, at *6 (barring the plaintiff's MCDCA, and MCPA claims); *see also Anyanwutaku*, 85 F. Supp. 2d at 571-72 (describing the factors that courts consider when deciding whether claims are part of the same cause of action and concluding that the fraud and misrepresentation issues could have been raised in the foreclosure proceeding).

The MCDCA, MCPA, MMFPA, and breach of contract claims (Counts 2, 3, 4, and 7) are dismissed with prejudice. Therefore, I need not address the *Rooker-Feldman* arguments.  Further, I have not addressed any of the Defendants additional arguments for dismissal under these causes of action.

## II.     Remaining Claims Against Bayview

Mr. Mitchell also asserts claims under FDCPA, RESPA, and FCRA against Bayview, and Bayview has moved to dismiss those causes of action (Counts 1, 5, and 6) for failure to state a claim.  I shall address each in turn.

---

[9]     Although Bayview did not specifically include the breach of contract claim in its *res judicata* arguments, Wells Fargo argued that the complaint, in its entirety, was barred by *res judicata* as to all defendants, Mot. I Mem. 1, and S&B also argued that all claims are barred by *res judicata*, Mot. III Mem. 10-12.  Under this alternative breach of contract claim against all Defendants, Plaintiff seeks to undermine the ratified foreclosure by asking "to have the funds paid at the foreclosure sale and prior monthly payments refunded" to him.   Am. Compl. ¶ 104.

### A.    FDCPA Claim

The Fair Debt Collection Practices Act seeks "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e).  The statute "regulates interactions between consumers and debt collectors by imposing affirmative statutory obligations upon debt collectors and proscribing certain abusive conduct." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 388-89 (4th Cir. 2014). "Debt collectors who violate the statute are liable to the debtor for actual damages, costs, and reasonable attorney's fees." *Id.* at 389 (citing 15 U.S.C. § 1692k(a)(1)). "To state a claim for relief under the FDCPA, a plaintiff must allege that '(1) he has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 758 (D. Md. 2017) (quoting *Webber v. Maryland*, No. RDB-16-2249, 2017 WL 86015, at *4 (D. Md. Jan. 10, 2017)).

Mr. Mitchell alleges that Bayview "communicated information bearing on Plaintiff's credit to third parties without communicating that Plaintiff disputed the debt in violation of 15 U.S.C. § 1692e." Resp. II, ECF No. 45, at 3 (citing Am. Compl. ¶ 50 and clarifying that the claim arises under 15 U.S.C. § 1692e(8)).  The FDCPA at § 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.  And Section 1692e(8) specifically prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Mr. Mitchell's amended complaint also includes a conclusory assertion that Bayview "qualifies as a debt collector for its principal business activity is the collection of debts on behalf of lenders and uses the mail primarily for its collection activity." Am. Comp. ¶ 4.

However, Bayview argues that Mr. Mitchell has failed to allege that any action taken was "in connection with the collection of a debt."  Mot. II Mem. at 6; Reply II, ECF No. 50, at 2 (quoting 15 U.S.C. § 1692e).  Mr. Mitchell alleges that Bayview claimed to have acquired the servicing of the loan, Am. Compl. ¶ 22, that he sent letters to Bayview that Bayview failed to acknowledge or fully address, ¶¶ 34-45, that Mr. Mitchell sent letters to the credit bureaus disputing Bayview's reporting of the loan, ¶ 46, and that Bayview did not investigate or make corrections when it received Mr. Mitchell's disputes from the credit bureaus, ¶ 47.  But Mr. Mitchell does not allege that Bayview took any actions related to collecting a debt.  Indeed, the complained-of communications could not have related to the collection of the mortgage loan (the only debt mentioned), given that Mr. Mitchell alleges that Bayview communicated the complained-of information after May 2019, Mr. Mitchell's letters to the credit bureaus were dated November and December 2019, and the foreclosure sale was ratified in December 2018.  *See id.* at ¶¶ 46, 50.

Additionally, Bayview argues that Mr. Mitchell fails to adequately plead damages. Certainly, a plaintiff may recover actual damages, including damages for emotional distress, under the FDCPA.  *See* 15 U.S.C. § 1692k(a)(1); *Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 536 (D. Md. 2013).  I note, however, that "a single boilerplate allegation" such as is pleaded here is not sufficient to state a plausible claim for emotional distress damages.  *See Valdez v. Arm Wyn, LLC*, No. 7:14-CV-00263, 2015 WL 3661102, at *3 (W.D. Va. June 12, 2015).

In sum, Mr. Mitchell has failed to make sufficient factual allegations to support a plausible FDCPA claim against Bayview.  Further, I note that since Mr. Mitchell's allegations related to activity that occurred after the foreclosure sale had been ratified, it appears it would be futile to

amend this claim to assert a plausible FDCPA claim against Bayview.  Nevertheless, Count 1 shall be dismissed without prejudice.

### B.    RESPA Claim

Congress enacted the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, in part "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process." 12 U.S.C. § 2601(a). To this end, when a mortgage loan servicer receives a qualified written request ("QWR") from a borrower seeking "information relating to the servicing of such loan," section 2605(e) sets the parameters of a loan servicer's "[d]uty ... to respond to borrower inquiries."[10]

To state a plausible claim under RESPA, a plaintiff must allege: "(1) a written request that meets RESPA's definition of a QWR, (2) the servicer failed to perform its duties, and (3) actual damages." *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018) (quoting *Thomas v. Ocwen Loan Servicing, LLC*, No. CV ELH-17-218, 2017 WL 2645721, at *6 (D. Md. June 19, 2017)).  A valid QWR must "relate to servicing" and not simply question the validity of a loan or request copies of loan documents for inspection. *Id.* at 418.[11]

Mr. Mitchell alleges that he sent letters to Bayview's designated location for receiving QWRs, and (1) Bayview failed to acknowledge receipt of his inquiries within 5 days, and then did not take appropriate action; (2) Bayview failed to suppress reporting delinquent payments to credit

---

[10]    For example, "the servicer shall provide a written response acknowledging receipt of the correspondence within five days . . . ." 12 U.S.C. § 2605(e)(1)(A). Then, within thirty days, the servicer must "investigate and provide the information or explain why it is unable to do so." *See* 12 U.S.C. § 2605(e)(2)(C). If, however, the servicer notifies the borrower that its response will be delayed by not more than fifteen days and provides "the reasons for the delay in responding," then "[t]he 30-day period . . . may be extended for not more than 15 days." 12 U.S.C. § 2605(e)(4).

[11]    "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

bureaus for 60 days after receiving his December 2019 letter; (3) Bayview failed to respond within 7 days of his inquiry regarding payoff balance and fees; and (4) Bayview failed to identify the entity that owns or is assignee of the loan.  Am. Compl. ¶¶ 77-80.  Bayview contends that Mr. Mitchell's letters fail to qualify as QWRs and asserts that its duties under RESPA terminated after the conclusion of the foreclosure.

> A QWR is
>
>> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  Mr. Mitchell alleges that his letters contained his name and account number and were written on paper that was not from Bayview. Am. Compl. ¶ 76.  Mr. Mitchell did not attach his letters, and he did not plead in detail the content of the letters.  He states that his letters "pertained to the loan or the servicing of the loan, and notified Bayview of an error and/or requested Bayview provide certain information concerning the loan."  *Id.*  Mr. Mitchell alleged that in August and September 2017, he sent two letters requesting

>> information concerning the original Note, requested a payoff or reinstatement quote, loan payment history for the life of the loan, proof or documents (e.g. invoices) to substantiate any fees or costs assessed on the loan, copies of any documents sent after the loan was declared in default and disputed the reporting of delinquent payments to the credit bureaus.

*Id.* at ¶ 34.  He also requested the return of the original Note, ¶ 40, and in December 2019, after the foreclosure had been ratified, he demanded a certified copy of the Note and proof that Bayview had the rights to collect on the note, ¶ 43. None of these allegations suffice to constitute a QWR. *See Barr*, 303 F. Supp. 3d at 418-19 (noting that the substance of the letters was for documents or

copies of documents and transactional history, and that a "bare assertion" of an error does not provide "sufficient detail").

Therefore, Mr. Mitchell has failed to plausibly allege a RESPA violation. However, although he does not appear to have a possible claim related to his 2019 letter, it may be possible for him to allege a violation with regards to his 2017 letters. Therefore, Count 5 shall be dismissed without prejudice.

### C.    FCRA Claim

The FCRA imposes duties on "furnishers of information upon notice of dispute," including that

> [a]fter receiving notice pursuant to section 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title . . . .

15 U.S.C. § 1681s-2(b)(1)(A)–(B).  To plausibly allege such a claim, "a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Magruder v. Educ. Sys. Fed. Credit Union*, 194 F. Supp. 3d 386, 389-90 (D. Md. 2016) (quoting *Ausar–El v. Barclay Bank Delaware*, No. PJM 12–0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012)).  Bayview contends that Mr. Mitchell's claim fails because it provided accurate information. *See* Mot. II. Mem. 27-28.

Mr. Mitchell alleges that he sent two letters, in November and December 2019, to the credit bureaus, in which he disputed the foreclosure as illegal because it was not in compliance with Maryland law.  Am. Compl. ¶ 46.  He also alleged that the credit bureaus notified Bayview about the dispute, but Bayview failed to conduct a reasonable investigation and merely verified the information as being accurately reported.  *Id.* at ¶ 47.  However, the foreclosure had been ratified in state court in December 2018, the Auditor's Report was ratified in April 2019, and copies had been recorded in the land records. State Ct. Docket 11-12, ECF No. 36-4. Therefore, by the time the credit bureaus received Mr. Mitchell's letters disputing the foreclosure as illegal, the accurate reporting of the account by Bayview was that the Property had been foreclosed upon.  Bayview's duty under the FCRA was to provide accurate information. *See* 15 U.S.C. § 1681s-2b.  Because Bayview provided accurate information, the FCRA claim fails. *See Alston v. Wells Fargo Home Mortgage*, Civil Action No. TDC-13-3147, 2016 WL 816733, at *10 (D. Md. Feb. 26, 2016) (citing *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 37-38 (1st Cir. 2010)).   Even though Mr. Mitchell disputed the legality of the foreclosure, Bayview was "neither qualified nor obligated" to resolve the legal question. *Id.*  Therefore, Count 6 will be dismissed with prejudice because any effort to further amend this count would be futile.

## ORDER

For the foregoing reasons,

1.    Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's First Amended Complaint, or in the Alternative for Summary Judgment, ECF No. 34, is GRANTED.  Plaintiff's claims against Wells Fargo shall be DISMISSED WITH PREJUDICE.

2.    Defendants' [Bayview, US Bank, and MetLife] Motion to Dismiss First Amended Complaint, ECF No. 36, is GRANTED.

      a.    Plaintiff's claims against US Bank and MetLife are DISMISSED WITH PREJUDICE.

    b.      Plaintiff's claims in Counts 2, 3, 4, 6, and 7 against Bayview are DISMISSED WITH PREJUDICE.  Plaintiff's claims in Counts 1 and 5 are DISMISSED WITHOUT PREJUDICE.

3.      [S&B's] Motion to Dismiss Plaintiffs' Complaint, ECF No. 37, is GRANTED.  Plaintiff's claims against S&B and its attorneys are DISMISSED WITH PREJUDICE.

4.      Defendant MERSCORP is DISMISSED WITH PREJUDICE.

5.      The Clerk is directed to CLOSE THIS CASE.

Dated: <u>September 13, 2021</u>                                 /S/

                                              Paul W. Grimm
                                            United States District Judge